IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

BRENDA L. HANSON                                                                                PLAINTIFF

      v.                                          CIVIL NO. 14-2024

CAROLYN W. COLVIN, Commissioner
Social Security Administration                                                            DEFENDANT

**MEMORANDUM OPINION**

      Plaintiff, Brenda Hanson, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claims for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under the provisions of Titles II and XVI of the Social Security Act ("Act"). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. §405(g).

**I. Procedural Background**

      Plaintiff protectively filed her applications for DIB and SSI on May 20, 2010, alleging an inability to work since January 1, 2006, due to osteoporosis, anxiety, depression, and arthritis. (Tr. 257-260). Plaintiff amended her onset date to January 30, 2009, at her administrative hearing. (Tr. 13, 34, 57-58). For DIB purposes, Plaintiff retained insured status through September 30, 2010. (Tr. 15, 258).

      Plaintiff's claims were denied initially and on reconsideration. (Tr. 109-115, 123-127). An administrative hearing was held on March 8, 2011, at which Plaintiff appeared without counsel and testified. (Tr. 60-82). On May 11, 2011, the Administrative Law Judge ("ALJ")

entered an unfavorable decision. (Tr. 90-99). The Appeals Council vacated the ALJ's decision on November 18, 2011, and remanded the case. (Tr. 104-107).

A second administrative hearing was held on July 12, 2012, at which Plaintiff appeared with counsel and testified. At the time of the second hearing, Plaintiff was forty-nine years of age and possessed a limited education. (Tr. 32). Plaintiff had past relevant work ("PRW") experience as a cashier and factory worker. (Tr. 21, 65-66).

By a written decision dated October 11, 2012, the ALJ determined Plaintiff had the following severe impairments: "disorder of the back and mood disorder." (Tr. 15). After reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listing. (Tr. 15-17). The ALJ found Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb ramps/stairs and ladders/ropes/scaffolds and can occasionally balance, stoop, kneel, crouch, and crawl. From a mental standpoint, she is able to perform work where interpersonal contact is incidental to the work performed; the complexity of tasks is learned and performed by rote, with few variables and little judgment; and the supervision required is simple, direct, and concrete.

(T. 65).

With the help of a vocational expert ("VE"), the ALJ determined Plaintiff could not perform her past relevant work ("PRW"), but retained the capacity to perform the requirements of representative occupations such as food prep worker/kitchen helper, maid/housekeeper, and machine operator. (Tr. 21-22, 54-57). The ALJ then found Plaintiff had not been under a disability during the relevant time period. (Tr. 22).

Plaintiff requested a review by the Appeals Council of the second decision on November 5, 2012, which denied that request on November 29, 2013. (Tr. 1-4, 8). Subsequently, Plaintiff

filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 8). Both parties have filed appeals briefs, and the case is ready for decision. (Docs. 11, 12).

**II. Applicable Law.**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217

3

(8th Cir. 2001); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)©. A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require the application of a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her RFC. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. §§ 404.1520, 416.920 (2003).

**III. Discussion**

Plaintiff argues on appeal that the ALJ (1) failed to include anxiety and personality disorder as severe impairments at step two, (2) should have found her mental impairments met Listings 12.06 and 12.08 at step three, (3) erred in his credibility determination, and (4) failed to address or give adequate weight to a low GAF score. (Doc. 11 at 8-19).

**A. Mental Impairments**

Step two of the regulations involves a determination, based on the medical evidence, whether the claimant has an impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is not severe if there is no more than a minimal effect on the claimant's ability to work. *See Bowen v. Yuckert*, 482 U.S. 137, 155

4

(1987)(O'Connor, S., concurring); *see also Brown v. Bowen*, 827 F.2d 311, 311-12 (8th Cir. 1987)(adopting Justice O'Connor's language). It is the claimant's burden to establish her impairment or combination of impairments are severe. *Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007).

Plaintiff believes the ALJ did not adequately discuss her mental impairments or consider her mental impairments in combination with her other impairments. (Doc. 11 at 9-13). Plaintiff did not brief how including an additional mental impairment would have affected the disability determination.

A review of the transcript shows the ALJ thoroughly discussed Plaintiff's mental health and addressed her use of Xanax, Celexa, and Remeron. (Tr. 16-20). The ALJ ultimately found Plaintiff's mood disorder was a severe impairment. (Tr. 15).

A review of the evidence shows Plaintiff's treating physician, Dr. Roxanne Marshall, prescribed Xanax for Plaintiff's anxiety condition. (Tr. 356). Dr. Patricia Walz, a State examining psychiatrist, performed a consultative mental examination on October 20, 2010. (Tr. 453-458). Dr. Walz diagnosed Plaintiff with depressive disorder, PTSD, and borderline personality disorder. (Tr. 453-458). She also assigned a GAF of 40-45 and opined Plaintiff's ability to communicate and to attend and sustain concentration on basic tasks were somewhat impaired by anxiety and dramatic behavior, but Plaintiff's ability to complete work-like tasks in an acceptable time frame was average. (Tr. 457-458). On November 2, 2011, Dr. Diane Kogut, a State non-examining psychiatrist, completed a mental RFC assessment and opined Plaintiff's depression, anxiety, and personality disorder resulted in some moderate limitations, but no marked limitations. (Tr. 464-474, 478-479).

At the administrative hearing on March 8, 2011, Plaintiff testified that she had not seen a counselor or therapist in at least ten years, but had established care with a counselor that morning. (Tr. 72-73). A review of the record shows Plaintiff met with a counselor, Tim Hughes, the morning of her hearing, who diagnosed her with PTSD and chronic mood disorder. (Tr. 541-550). Over the next three months Plaintiff met with Mr. Hughes four more times. (Tr. 563-566). On May 6, 2011, Mr. Hughes noted Plaintiff "appeared in a better mood" and was showing some progress toward her goals. (Tr. 564). On June 1, 2011, Mr. Hughes noted Plaintiff was not compliant with behavior techniques, stated her behavior met the criteria for borderline personality disorder, and documented that she requested a female therapist. (Tr. 565). On June 13, 2011, Plaintiff had a final session with Mr. Hughes where she reported the session "helped her a little bit." (Tr. 566).

Plaintiff did not seek any specialized treatment for her mental conditions after terminating treatment with Mr. Hughes. At the hearing, she explained she terminated treatment because she preferred to see a woman therapist, but the record shows she did not seek further counseling. (Tr. 52). In October 2011, Dr. Marshall began prescribing Plaintiff Celexa, and at a follow up visit recommended Plaintiff see a counselor. (Tr. 568, 607).

On August 9, 2011, Dr. Steve Shry, a State examining psychiatrist, performed a consultative mental examination and submitted a Medical Source Statement. (Tr. 597-604). Dr. Shry could not validly assess Plaintiff because she was dramatic and non-cooperative, but ruled out mental retardation. (Tr. 603). He opined Plaintiff was a malingerer because she assumed a dramatic, inappropriate demeanor, did not answer questions candidly, and she failed the Rey Screening Test for malingering. (Tr. 601-604).

The Court finds substantial evidence supports the ALJ's conclusions, and Plaintiff''s anxiety and depression were non-severe. There is no indication in the record that these impairments had more than a minimal effect on Plaintiff's ability to work. Plaintiff did not seek specialized treatment for her mental conditions except for a brief period near her first administrative hearing, and she terminated treatment after indicating the treatment was helping. Medications also appeared to control her anxiety and depression, which indicated her conditions were not severe. *See Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

The Court also notes the ALJ's discussion of her mental health and mood disorder and ultimate RFC determination addressed limitations from her anxiety, depression, and borderline traits. (Tr. 18-20). An ALJ's failure to include an additional impairment as severe at step two does not require reversal so long as the ALJ considered all of a claimant's impairments in the subsequent analysis. *See e.g., Mariarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). The ALJ adequately considered all of Plaintiff's mental limitations in determining her RFC. Even assuming that the ALJ should have included additional severe impairments at step two, the error was harmless because the ALJ considered all of Plaintiff's impairments in the remaining steps of the disability determination. *Id.*

**B. Listings 12.06 and 12.08**

Plaintiff next argues the ALJ erred by failing to evaluate her mental impairments under Listings 12.06 and 12.08. (Doc. 11 at 13-15). A claimant has the burden of proving an impairment or combination of impairments meets or equals a listing in the Listing of Impairments, Appendix I, Subpart P, Regulation No. 4. *See Johnson v. Barnhart*, 390 F.3d 1067,

AO72A
(Rev. 8/82)

1070 (8th Cir. 2004). To meet a listing, a claimant must show her impairment met all of the listing's criteria. *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010).

The ALJ analyzed whether Plaintiff's mental impairments satisfied the "paragraph B" criteria for a mental disorder listing and specifically referred to Listing 12.04-Affective Disorders. Paragraph B requires at least two of the following:

> (1) marked restrictions in the activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App 1, § 12.04B.

The ALJ concluded Plaintiff did not meet the paragraph B criteria because she had only a mild restriction in her ability to perform the activities of daily living, moderate difficulties in the areas of concentration, persistence, or pace, moderate difficulties in social functioning, and no episodes of decompensation. (Tr. 16).

When an ALJ fails to address a specific listing, the failure to do so is harmless if the record supports the overall conclusion. *See Pepper v. Barnhart*, 342 F.3d 853, 855 (8th Cir. 2003). While the ALJ did not refer to Listings 12.06 or 12.08, it was unnecessary because Plaintiff's anxiety and depression were found to be non-severe impairments and these listings have the same paragraph B criteria as Listing 12.04. *See* 20 C.F.R. Pt. 404, Subpt. P, App 1, §§ 12.04B, 12.06B, 12.08B.

**C. Credibility Analysis**

Plaintiff believes the ALJ erred by finding she was not credible, and argues the ALJ did not make a proper credibility determination regarding her friend's testimony. (Doc 11. at 15)

8

The ALJ was required to consider all of the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. It is well established that "credibility is primarily a matter for the ALJ to decide." *Edwards*, 314 F.3d at 966. The ALJ is entitled to make a factual determination that a claimant's subjective complaints are not credible when contrary objective medical evidence exists. *Ramirez*, 292 F.3d at 581.

The written decision shows the ALJ addressed the *Polaski* factors, but discounted Plaintiff's claims because her conditions were effectively treated and because of Dr. Shry's opinion that she was a malingerer who refused to discuss her symptoms during his consultative examination. (Tr. 18-19). The ALJ also noted her conflicting testimony such as her statement she was incapable of driving, although she drove to her hearing and her exams and admitted she transported her children, and her inconsistent answers about her level of education. (Tr. 19). The ALJ additionally highlighted that she failed to seek consistent counseling or therapy for her mental conditions and failed to submit a Pain Questionnaire. (Tr. 19-20). These were valid reasons for discounting Plaintiff's claims and were consistent with the record. *See e.g., Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012); *see also Baker v. Barnhart*, 457 F.3d 882, 892 (8th Cir. 2006)(stating an ALJ is entitled to draw conclusions about a claimant's credibility when

physician's reports indicating the claimant was exaggerating symptoms and giving less than full effort).

As for the treatment of Plaintiff's third party witness, the ALJ found that the friend's testimony "added little to the evaluation of the claimant's allegations." (Tr. 20) Although he did not discuss whether he found Plaintiff's friend credible, he was not required to make an explicit credibility finding. As Defendant explained in her brief, the evidence the ALJ identified that discredited Plaintiff's testimony applied to her friend's testimony. *See Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000). The Court also notes the friend's testimony tended to discredit Plaintiff's testimony because Plaintiff represented to her examining physicians that she was unable to maintain social relationships due to her anxiety and personality disorder, but her friend testified she spent time with Plaintiff "every single day." The friend also indicated Plaintiff's medications did not have side effects and were effective, and illustrated she could easily tell when Plaintiff was off her medications. (Tr. 49-51, 458).

Accordingly, the Court finds the ALJ's credibility determination was based on substantial evidence.

**D. GAF Score**

Plaintiff believes the ALJ erred by not discussing or giving significant weight to the GAF score of 40-45 assigned by Dr. Walz. [1] (Doc. 11 at 17-18).

---

[1] Plaintiff appears to have mischaracterized Dr. Walz as a treating physician in her brief to bolster her argument that the GAF score was entitled to controlling weight. (Doc. 11 at 18). Dr. Walz only performed a consultative mental examination at the request of the SSA. (Tr. 453-458).

A Global Assessment Functioning ("GAF") score is a measure of the severity of a claimant's symptoms and reflects a clinician's judgment of a person's overall level of functioning. *See generally Jones v. Astrue*, 619 F.3d 963, 973 (8th Cir. 2010). Because the "final GAF rating always reflects the worse of the two [factors], the score does not reflect the clinician's opinion of functional capacity." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)(quoting AM. PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000)).

The Eighth Circuit has held that a "GAF score is not essential to the accuracy of an RFC determination, only that it may be of considerable help in formulating RFC." *Earnheart v. Astrue*, 484 F. Appx. 73, 75 (8th Cir. 2012). Although a lengthy history of low GAF scores indicates the existence of serious limitations, *Pate-Fires v. Astrue*, 564 F.3d 935, 944 (8th Cir. 2009), the SSA has explained that, "the GAF scale ... does not have a direct correlation to the severity requirements in our mental disorders listings." 65 Fed. Reg. 50764-765. "An ALJ may afford greater weight to medical evidence and testimony than to GAF scores when the evidence requires it."*Jones*, 619 F.3d at 974.

Although Dr. Walz assigned a GAF score of 40-45, the assignment of a low GAF score, while relevant, was not the critical piece of evidence in Dr. Walz's report. The ALJ thoroughly addressed Dr. Walz's report as a whole and ultimately included nonexertional limitations that reflected Dr. Walz's opinion. (Tr. 18-19). Importantly, the ALJ gave great weight to Dr. Walz's opinion that Plaintiff's attention, concentration, and social skills were impaired by anxiety. (Tr. 19). The ALJ was not required to discuss every piece of Dr. Walz's report, and lack of a reference to Plaintiff's GAF score does not mean that it was not considered. *See e.g., Wildman*

11

*v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010). The ALJ's failure to reference Dr. Walz's GAF score is not reversible error because the ALJ adequately considered Dr. Walz's opinions and the record as a whole supported the ALJ's RFC determination. *See Stephens v. Colvin,* no.13-cv-2144, 2014 WL 1922814 at *6-7 (W.D. Ark. May 14, 2014); *see also Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)(stating the failure to reference a GAF score, standing alone, does not make the RFC inaccurate).

**IV. Conclusion:**.

Having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 24th day of February, 2015.

/s/ *Mark Ford*
HON. MARK FORD
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)